# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**BASF AGRO B.V., ARNHEM (NL), WÄDENSWIL BRANCH, BAYER S.A.S., and MERIAL LIMITED,**

     **Plaintiffs,**

**v.**

**CHEMINOVA, INC.,**

     **Defendant.**

**Civil Action No. 10-274**

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT

Plaintiffs BASF Agro B.V., Arnhem (NL), Wädenswil Branch, Bayer S.A.S., and Merial Limited (collectively "Plaintiffs") for their complaint against defendant Cheminova, Inc. allege as follows:

### JURISDICTION AND VENUE

1. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter of this action based on 28 U.S.C. §§ 1331 and 1338(a). Venue is proper under 28 U.S.C. §§ 1391 and 1400(b).

### THE PARTIES

2. Plaintiff BASF Agro B.V., Arnhem (NL), Wädenswil Branch ("BASF") is a limited liability company organized under the laws of The Netherlands, acting through its Swiss branch office, which is organized under the laws of Switzerland and registered at the

Handelsregisteramt Zürich, Zürich, Switzerland, with its place of business at Moosacherstraße 2, CH-8804 Au, Switzerland and its head office postal address at Postfach 69, CH-8820 Wädenswil, Switzerland. The registered office of BASF Agro B.V., Arnhem (NL) is located at Groningensingel 1, Arnhem Gelderland, 6835 EA, The Netherlands.

3.     BASF markets and sells products relevant to this case in the United States through its agent and distributor BASF Corporation ("BASF Corp."), which is a Delaware Corporation with its headquarters in Florham Park, New Jersey. BASF Corp. operates much of the business relevant to this action out of its Agrochemical Products Division's United States headquarters located in Research Triangle Park, North Carolina ("RTP").

4.     Plaintiff Bayer S.A.S. ("Bayer") is a company organized and existing under the laws of France, with its principal place of business in Lyon, France.

5.     Plaintiff Merial Limited ("Merial") is a company limited by shares registered in England and Wales with a registered office in England. Merial is domesticated in the State of Delaware, as Merial LLC. Merial's United States operational headquarters is located in Duluth, Georgia.

6.     Defendant Cheminova, Inc. ("Cheminova") is a corporation organized under the laws of Delaware, with its principal place of business at Research Triangle Park, North Carolina, and is a wholly owned subsidiary of Cheminova A/S.

7.     Cheminova A/S ("Cheminova A/S") is a company based in and organized under the laws of Denmark. Cheminova A/S imports into the United States technical material and/or end-use products that have been manufactured abroad.

2

8.      Cheminova and Cheminova A/S hold EPA registrations for technical material and/or end-use products for use in the agrochemical products industry.

9.      Cheminova markets, distributes, and supplies many agrochemical compounds and formulations, in direct competition with Plaintiffs.

## PATENTS

10.     On July 2, 2002, United States Patent No. 6,414,010 ("the '010 patent") (attached hereto as Exhibit A), entitled "Pesticidal Pyrazoles and Derivatives," was duly and legally issued. The '010 patent teaches and claims novel processes for protecting a building that has already been built or that is going to be built, whereby an insecticidal compound, such as Fipronil, is spread around or under the building at discrete locations, These processes allow for protection of a building with less insecticide than in conventional application methods and without the need to know where insects might be.

11.     Bayer is the assignee and owner of the '010 patent, and BASF is the exclusive licensee of the '010 patent in the United States with respect to Fipronil. Plaintiffs are the owners of all rights, title and interest in and to the '010 patent, including all rights to recover for any and all past and present infringement thereof with respect to Fipronil.

12.     On December 28, 2004, United States Patent No. 6,835,743 ("the '743 patent") (attached hereto as Exhibit B), entitled "Pesticidal Pyrazoles and Derivatives," was duly and legally issued. The '743 patent teaches and claims novel processes for protecting a building that has already been built or that is going to be built, whereby an insecticidal compound, such as Fipronil, is spread around or under the building at discrete locations. The processes allow

for protection of a building with less insecticide than in conventional application methods and without the need to know where insects might be.

13.     Bayer is the assignee and owner of the '743 patent, and BASF is the exclusive licensee of the '743 patent in the United States with respect to Fipronil. Plaintiffs are the owners of all rights, title and interest in and to the '743 patent, including all rights to recover for any and all past and present infringement thereof with respect to Fipronil.

14.     On September 16, 2003, United States Patent No. 6,620,943 ("the '943 patent") (attached hereto as Exhibit C), entitled "Process For Preparing 4-Trifluoromethylsulfinylpyrazole Derivative," was duly and legally issued. The '943 patent teaches and claims novel processes for preparing a class of chemical compounds, including Fipronil, from a different class of compounds. The '943 patent teaches and claims the final step in processes to make Fipronil.

15.     BASF is the assignee from Bayer and current owner of the '943 patent. Merial is the exclusive licensee of the '943 patent in the animal health field. Thus, Plaintiffs are the owners of all rights, title, and interest in and to the '943 Patent, including all rights to recover for any and all past and present infringement thereof, for non-animal health uses.

16.     On April 19, 2005, United States Patent No. 6,881,848 ("the '848 patent") (attached hereto as Exhibit D), entitled "Process For Preparing 4-Trifluoromethylsulfinylpyrazole Derivative," was duly and legally issued. The '848 patent teaches and claims novel processes for preparing a class of chemical compounds, including Fipronil, from classes of starting and intermediate compounds. The '848 patent teaches and

4

claims the final steps in processes to make Fipronil.

17.      BASF is the assignee from Bayer and current owner of the '848 patent. Merial is the exclusive licensee of the '848 patent in the animal health field. Thus, Plaintiffs are the owners of all rights, title, and interest in and to the '848 Patent, including all rights to recover for any and all past and present infringement thereof, for non-animal health uses.

18.      In addition to these patents, BASF, Bayer, and Merial own or exclusively license a number of other patents related to Fipronil, reflecting its commercial importance and the significant investments that have been made to purchase, develop, and improve Plaintiffs' Fipronil business.

## BACKGROUND

19.      Plaintiffs and their affiliates are in the business of researching, developing, testing, and/or selling multiple types of products and technologies in the agrochemical field and/or animal health fields.

20.      BASF has Fipronil technical material manufactured for it in France by a BASF affiliate. This Fipronil technical material serves as the active ingredient in formulated chemical products ("Fipronil-based products"). BASF sends Fipronil technical material made in France to the United States and Brazil where it is formulated into Fipronil-based products for commercial sale in the United States.

21.      BASF Corp. operates in the United States as a sales and marketing agent of and distributor for BASF's agrochemical products, including Fipronil technical material and Fipronil-based products. BASF Corp. operates much of its Fipronil business out of its

agrochemical products headquarters in RTP. BASF Corp. sells Fipronil technical material and Fipronil-based products in the United States to its customers, who are primarily distributors.

22.     The agrochemical-related Fipronil-based branded products sold in the United States include Termidor® SC and Termidor® 80 WG, Regent® 4SC, and Amulet® CL. These Fipronil-based insecticides have been approved by the EPA for the prevention and elimination of insect infestations.

23.     Termidor® is a slow-acting insecticide that is odorless and undetectable to insects. When a termite ingests or touches Termidor®, the termite becomes a "carrier," transferring Termidor® to every other termite it contacts. Because Termidor® is slow-acting, it allows for more transfer of the product within the termite colony. Termites exposed to Termidor® behave normally over a short period of time before dying, which ensures transfer of the product to other termites in the colony.

24.     As a distributor for BASF, BASF Corp. also markets PerimeterPlus, which is the BASF brand name for an innovative treatment method of applying Termidor® to protect against termites. The PerimeterPlus treatment method is described in BASF's EPA-approved Termidor® Master Use Labels and is covered by the '010 and '743 patents. PerimeterPlus allows applicators to apply less termiticide than they would by conventional treatment methods and to avoid certain labor-intensive, invasive, and physically demanding interior treatments.

25.     Termidor® is the most effective termiticide sold in the United States. Termidor®, particularly Termidor® that is applied using the PerimeterPlus treatment method,

is the leading termiticide sold in the United States.

26.     The animal health-related Fipronil-based branded products sold in the United States include Merial's FRONTLINE® brand products, such as its FRONTLINE TOP SPOT® and FRONTLINE PLUS® products.

27.     Merial's FRONTLINE® brand products are the number one veterinarian recommended flea and tick treatment products for dogs and cats in the world.

28.     Merial has expended great sums of money developing and obtaining regulatory approval for its Fipronil-based animal health compositions, such as its FRONTLINE® brand products and for its exclusive license to Fipronil-related patents in the animal health field.

## CHEMINOVA'S PREPARATIONS TO INFRINGE

29.     As set forth more fully below, Cheminova has taken significant, concrete steps and has made meaningful preparations, either alone or in concert with third-parties, to sell, use, and offer for sale Fipronil technical material or Fipronil-based termiticide products within this district and throughout the United States beginning approximately in early August 2010.  The sale, use, or offer for sale of such material and products will constitute infringement of the '010, '743, '943, and '848 patents.

30.     Cheminova's infringing activities likely began on or before August 2010 because August 3, 2010 was the expiration date of United States Patent No. 5,232,940 ("the '940 patent"), entitled "Derivatives of N-phenylpyrazoles," which covers the actual chemical compound known as Fipronil and also is assigned to and owned by BASF.  Cheminova used the expiration of the '940 compound patent as a pretext for offering and selling Fipronil

7

technical material and Fipronil-based products, disregarding the fact that its conduct will infringe the '943 and '848 manufacturing process patents and the '010 and '743 method-of-use patents. The '943 and '848 patents do not expire until September 16, 2023 and April 19, 2025, respectively. The '010 and '743 patents do not expire until November 27, 2017.

31. Cheminova, either directly or through its agents and affiliated corporations, recently received from third-parties Fipronil technical material manufactured outside of the U.S. This Fipronil technical material was made using a process that is covered by the '943 and '848 patents when it is imported into the United States or sold, used, or offered for sale in the United States.

32. Cheminova, either alone or in concert with third-parties, will use this Fipronil technical material to produce commercial formulations of Fipronil to sell, use, and offer for sale throughout the United States, knowing and intending that its customers or the end-users of its customers will apply Cheminova's Fipronil-based products using the methods and processes covered by the '743 and '010 patents.

33. In early 2010, Cheminova began taking steps to secure regulatory approval to sell, use, and offer for sale Fipronil in the United States beginning approximately in early August 2010. Cheminova submitted petitions to the EPA seeking to register Fipronil technical material and a Fipronil-based product. Cheminova recently also offered to pay BASF for reliance on data that BASF earlier submitted to the EPA in connection with BASF's own Fipronil technical material and Fipronil-based products.

34. On March 17, 2010, Martin Petersen, President of the ANZAC region of

Cheminova A/S and President of Cheminova, Inc., called Nevin McDougall, BASF's Group Vice President for North America, and stated that Cheminova would attempt to "invalidate" BASF's use patents, *i.e.,* the '010 and '743 patents, unless BASF agreed to license them to Cheminova within the following few weeks. By this statement, Mr. Petersen threatened imminent litigation and admitted that Cheminova plans to offer for sale in the United States products that would infringe the '010 and '743 patents unless they were deemed to be invalid (which they are not) or Plaintiffs agreed to relinquish their legal right to be the exclusive provider of their patented products (which they do not intend to do).

35.     On March 24, 2010, Soren Nordlyng, a patent manager at Cheminova A/S, left a voicemail message with Gale Matthews, assistant general counsel for BASF Corp., asking to discuss the same matters that arose in the March 17, 2010 call. On March 29, 2010, Mr. Nordlyng sent an email to Ms. Matthews acknowledging that "Cheminova is looking into the business of Fipronil in the US" and shortly planned to bring "external US patent counsel into the picture."

36.     In response, Ms. Matthews confirmed Plaintiffs' concern "about products that Cheminova is planning to make, use or sell in the U.S. as we believe they would infringe our patents related to the process by which Fipronil is manufactured, as well as patents related to the method of using Fipronil." Ms. Matthews also confirmed that Plaintiffs "have elected to be the exclusive provider in the United States of Fipronil as a termiticide, supported by our patent portfolio. We believe our patents are valid and enforceable."

37.     BASF unsuccessfully has sought assurances from Cheminova that it would not

begin to infringe the patents in August 2010, but Cheminova has not changed course and is going forward with its plans to sell, use, and offer for sale its Fipronil technical material and Fipronil-based products, beginning approximately in early August 2010. For example, some time in March 2010, Cheminova solicited a current customer of BASF, stating that Cheminova intends to sell Fipronil-based products in competition with BASF by the fourth quarter of 2010.

38.     Cheminova has also taken significant, concrete steps and has meaningful preparations, either alone or in concert with third-parties, to sell, use, and offer for sale Fipronil technical material or Fipronil-based products in the animal health field within this district and throughout the United States. For example, animal health companies Velcera, Inc., FidoPharm, Inc., and Omnipharm, Ltd. recently sued Cheminova in the Court of Chancery of the State of Delaware on August 30, 2010 for the breach of a Fipronil-supply contract. On information and belief, FidoPharm, Inc., and Omnipharm, Ltd. entered into that agreement with Cheminova on December 16, 2009.

39.     In addition, Cheminova has submitted a petition to the EPA seeking to register a product containing Fipronil as the active ingredient and, as part of that petition, offered to pay Merial for reliance on data that Merial earlier submitted to the EPA in connection with Merial's own Fipronil-based animal health products.

40.     If Cheminova is permitted to sell, use, and offer for sale its Fipronil technical material and Fipronil-based products, Plaintiffs will suffer irreparable, unquantifiable harm.

41.     Plaintiffs have made substantial investments in their Fipronil businesses, including

10

acquiring intellectual property, improving products and manufacturing processes through research and development, marketing their products and establishing strong brands, developing strong customer relationships, and remaining the exclusive supplier of the top performing termiticide and the number one veterinarian recommended flea and tick treatment products for dogs and cats in the marketplace.

42.    To help protect their substantial investments, Plaintiffs have obtained patents, including the '010, '743, '943, and '848 patents, that grant Plaintiffs the legal right to exclude others from using their inventions. Plaintiffs have exercised their legal right by becoming the exclusive suppliers of Fipronil-based termiticides and Fipronil-based flea and tick products in the U.S.

43.    Cheminova seeks to gain all the benefits of Plaintiffs' substantial investments in Fipronil and the Fipronil market, but pay none of the costs, by introducing infringing, generic products into the marketplace. Cheminova's attempt to "piggy-back" on Plaintiffs' substantial investments undermines the purpose of the patent laws of the United States, which allow Plaintiffs a period of exclusivity as an incentive to invest and innovate.

44.    Cheminova's infringement will inflict irreparable and irreversible harm, causing Plaintiffs to suffer lost market share, price erosion, and damage to the goodwill and reputation Plaintiffs have spent years to establish. These losses are impossible to recapture and impossible to quantify and may affect sales and relationships relating to non-Fipronil based products.

45.    There is a substantial and continuing justiciable controversy between Plaintiffs

11

and Cheminova given Cheminova's meaningful preparations to conduct infringing activities, and the concrete steps it has taken towards that end. Cheminova's actions have created a reasonable apprehension in Plaintiffs of imminent and irreparable harm and loss.

46.     In light of Cheminova's concrete steps and meaningful preparations to sell, use, and offer for sale Fipronil technical material and/or Fipronil-based products in the United States; its refusal to change course in the face of its knowledge of the '010, '743, '943, and '848 patents; its EPA registrations for Fipronil technical material and a Fipronil-based termiticide for commercial sale; its failure to provide assurances of non-infringement to Plaintiffs; and its threats to commence litigation in an attempt to invalidate Plaintiffs' patents, there is a real and immediate controversy concerning Cheminova's infringement of the '010, '743, '943, and '848 patents under 35 U.S.C. § 271.

## COUNT I
**(Declaratory Judgment of Infringement of the '010 Patent and Injunctive Relief)**

47.     BASF and Bayer repeat and re-allege the allegations of paragraphs 1 through 46 in their entirety.

48.     Cheminova has infringed, is infringing, will continue to infringe, and/or will imminently infringe, literally and/or under the doctrine of equivalents, one or more claims of the '010 patent, directly, by contributory infringement, and/or by actively inducing infringement.

49.     Cheminova's infringement of the '010 patent, direct and/or indirect, was, is, and will continue to be willful.

12

50.     As a consequence of Cheminova's infringement of the '010 patent, direct and/or indirect, BASF and Bayer suffered, are suffering, and will continue to suffer irreparable harm for which there is no adequate remedy at law. These injuries will continue unless and until Cheminova's infringing activities are preliminarily and permanently enjoined by this Court.

51.     As a consequence of Cheminova's infringement of the '010 patent, direct and/or indirect, BASF and Bayer suffered, are suffering, and will continue to suffer damages in an amount not yet determined.

## COUNT II
### (Declaratory Judgment of Infringement of the '743 Patent and Injunctive Relief)

52.     BASF and Bayer repeat and re-allege the allegations of paragraphs 1 through 51 in their entirety.

53.     Cheminova has infringed, are infringing, will continue to infringe, and/or will imminently infringe, literally and/or under the doctrine of equivalents, one or more claims of the '743 patent, directly, by contributory infringement, and/or by actively inducing infringement.

54.     Cheminova's infringement of the '743 patent, direct and/or indirect, was, is, and will continue to be willful.

55.     As a consequence of Cheminova's infringement of the '743 patent, direct and/or indirect, BASF and Bayer suffered, are suffering, and will continue to suffer irreparable harm for which there is no adequate remedy at law. These injuries will continue unless and until Cheminova's infringing activities are preliminarily and permanently enjoined by this Court.

13

56. As a consequence of Cheminova's infringement of the '743 patent, direct and/or indirect, BASF and Bayer suffered, are suffering, and will continue to suffer damages in an amount not yet determined.

## COUNT III
### (Declaratory Judgment of infringement of the '943 Patent and Injunctive Relief)

57. BASF and Merial repeat and re-allege the allegations of paragraphs 1 through 46 in their entirety.

58. Cheminova has infringed, is infringing, will continue to infringe, and/or will imminently infringe, literally and/or under the doctrine of equivalents, one or more claims of the `943 patent, directly, by contributory infringement, and/or by actively inducing infringement.

59. Cheminova's infringement of the '943 patent, direct and/or indirect, was, is, and will continue to be willful.

60. As a consequence of Cheminova's infringement of the '943 patent, direct and/or indirect, BASF and Merial suffered, are suffering, and will continue to suffer irreparable harm for which there is no adequate remedy at law. These injuries will continue unless and until Cheminova's infringing activities are preliminarily and permanently enjoined by this Court.

61. As a consequence of Cheminova's infringement of the '943 patent, direct and/or indirect, BASF and Merial suffered, are suffering, and will continue to suffer damages in an amount not yet determined.

## COUNT IV
### (Declaratory Judgment of Infringement of the '848 Patent and Injunctive Relief)

62.     BASF and Merial repeat and re-allege the allegations of paragraphs 1 through 46 in their entirety.

63.     Cheminova has infringed, is infringing, will continue to infringe, and/or will imminently infringe, literally and/or under the doctrine of equivalents, one or more claims of the `848 patent, directly, by contributory infringement, and/or by actively inducing infringement.

64.     Cheminova's infringement of the '848 patent, direct and/or indirect, was, is, and will continue to be willful.

65.     As a consequence of Cheminova's infringement of the '848 patent, direct and/or indirect, BASF and Merial suffered, are suffering, and will continue to suffer irreparable harm for which there is no adequate remedy at law.  These injuries will continue unless and until Cheminova's infringing activities are preliminarily and permanently enjoined by this Court.

66.     As a consequence of Cheminova's infringement of the '848 patent, direct and/or indirect, BASF and Merial suffered, are suffering, and will continue to suffer damages in an amount not yet determined.

**PRAYER FOR RELIEF**

WHEREFORE, BASF and Bayer pray for judgment:

A.     Declaring that Cheminova's plans to sell, use, and offer for sale a Fipronil-based product or Fipronil technical material will infringe one or more claims of the '010 and '743 patents, directly, by contributory infringement, and/or by actively inducing infringement;

15

B.      Preliminarily and permanently enjoining Cheminova and its officers, agents, servants, employees, parents, subsidiaries, affiliates, successors, assignees, licensees, and attorneys, and all persons acting in concert or participation with them, from infringing the '010 and '743 patents, directly, by contributory infringement, and/or by actively inducing infringement;

C.      If necessary at some future date, awarding BASF and Bayer damages in an amount adequate to compensate them for harm caused by Cheminova's plans to engage in activities that constitute infringement, and any infringement after the filing of this action, of the '010 and '743 patents, but in no event less than a reasonable royalty;

D.      If necessary at some future date, awarding BASF and Bayer pre judgment and post-judgment interest on the damages caused to them by reason of Cheminova's past and ongoing infringement of the '010 and '743 patents;

E.      Declaring that Cheminova's plans to engage in activities that will infringe, and any infringement after the filing of this action of, the '010 and '743 patents has been and is willful, and trebling damages, if any, awarded for that infringement;

F.      Declaring that this is an "exceptional case" pursuant to 35 U.S.C. § 285 and ordering Cheminova to pay BASF's and Bayer's attorneys' fees and costs; and

G.      Awarding such other and further relief as this Court may deem just and proper.

WHEREFORE, BASF and Merial additionally pray for judgment:

H.      Declaring that Cheminova's plans to sell, use, and offer for sale a Fipronil-

based product or Fipronil technical material will infringe one or more claims of the '943 and '848 patents, directly, by contributory infringement, and/or by actively inducing infringement;

I.      Preliminarily and permanently enjoining Cheminova and its officers, agents, servants, employees, parents, subsidiaries, affiliates, successors, assignees, licensees, and attorneys, and all persons acting in concert or participation with them, from infringing the '943 and '848 patents, directly, by contributory infringement, and/or by actively inducing infringement;

J.      If necessary at some future date, awarding BASF and Merial damages in an amount adequate to compensate them for harm caused by Cheminova's plans to engage in activities that constitute infringement, and any infringement after the filing of this action, of the '943 and '848 patents, but in no event less than a reasonable royalty;

K.      If necessary at some future date, awarding BASF and Merial pre judgment and post-judgment interest on the damages caused to them by reason of Cheminova's past and ongoing infringement of the '943 and '848 patents;

L.      Declaring that Cheminova's plans to engage in activities that will infringe, and any infringement after the filing of this action of, the '943 and '848 patents has been and is willful, and trebling damages, if any, awarded for that infringement;

M.      Declaring that this is an "exceptional case" pursuant to 35 U.S.C. § 285 and ordering Cheminova to pay BASF's and Merial's attorneys' fees and costs; and

N.      Awarding such other and further relief as this Court may deem just and

proper.

## **JURY DEMAND**

Trial by jury is demanded on all issues for which a jury trial is available.

Case 1:10-cv-00274-WO -WWD   Document 50   Filed 10/15/10   Page 18 of 21

DATED: October 15, 2010

/s/ Pressly M. Millen

Pressly M. Millen (NCSB No. 16178)
WOMBLE CARLYLE SANDRIDGE & RICE,
PLLC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601 fbullock@wcsr.com
pmillen@wcsr.com  phone: (919) 755-2100
fax: (919) 755-2150

*Attorneys for Plaintiffs*
*BASF Agro B.V, Arnhem (NL), Wadenswil*
*Branch and Bayer S.A.S.*

Of Counsel:

Kenneth A. Gallo
Craig Benson
Kent Kemeny
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON, LLP
2001 K Street NW
Washington, DC 20006-1047
kgallo@paulweiss.corn
cbenson@paulweiss.com
kkemeny@paulweiss.com
phone: (202) 223-730
fax: (202) 223-7420

Kripa Raman
Jayson L. Cohen
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
kraman@paulweiss.com
jlcohen@paulweiss.com

/s/ Jitty Malik

Jitendra Malik, Ph.D. (NCSB No. 32809)
Attorney for Merial Limited
ALSTON & BIRD, LLP
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Tel.: (704) 444-1115
Fax.: (704) 444-1695
jitty.malik@alston.com

Of Counsel:

Judy Jarecki-Black, Ph.D.
MERIAL LIMITED
3239 Satellite Blvd.
Duluth, GA 30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350
judy.jarecki@merial.com

Frank G. Smith, III
John W. Cox, Ph.D.
Matthew W. Howell
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777
frank.smith@alston.com
john.cox@alston.com
matthew.howell@alston.com

Deepro R. Mukerjee
ALSTON & BIRD LLP
90 Park Avenue

phone: (212) 373-3000
fax: (212) 757-3990

Robert J. Koch
MILBANK, TWEED, HADLEY & MCCLOY
LLP
1850 K Street, N.W., Suite 1100
Washington, DC 20006
rkoch@milbank.com
phone: (202) 835-7500
fax: (202) 835-7586

New York, NY 10016-1387
Tel.: (212) 210-9501
Fax: (212) 922-3881
deepro.mukerjee@alston.com

J. Patrick Elsevier, Ph.D.
JONES DAY
12265 El Camino Real, Suite 200
San Diego, CA 92130
Tel.: (858) 314-1200
Fax: (858) 314-1150
jpelsevier@jonesday.com

*Attorneys for Plaintiff Merial Limited*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants.

Dated: October 15, 2010

/s/ Jitendra Malik
Jitendra Malik, Ph.D. (NCSB No. 32809)
Attorney for Merial Limited
ALSTON & BIRD LLP
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
Tel.: (704) 444-1115
Fax:  (704) 444-1695
E-mail:  jitty.malik@alston.com

*Counsel for Merial Limited*