# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

| | |
|---|---|
| BASF AGRO B.V., ARNHEM (NL), WÄDENSWIL BRANCH, and BAYER S.A.S.,<br><br>Plaintiffs,<br><br>v.<br><br>CHEMINOVA, INC.,<br><br>Defendant. | Civil Action No. 10-cv-274 |

## [DRAFT] PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules"), plaintiffs BASF Agro B.V., Arnhem (NL), Wädenswil Branch ("BASF"), and Bayer S.A.S., ("Bayer") (collectively "Plaintiffs") propound the following interrogatories to defendants Cheminova, Inc. ("Defendant") to be answered fully, in writing and under oath, through an officer or agent who has knowledge of the facts, and in accordance with the definitions and instructions set forth below, within thirty (30) days from the date of service hereof.

## DEFINITIONS

1. The terms "Defendant," "you," and "your" shall mean Cheminova, Inc., together with all partners, directors, owners, officers, members, employees, agents, representatives, attorneys, and any other persons under the control of Cheminova, Inc., including all parents, divisions, subsidiaries, affiliates, or corporate predecessors of Cheminova, Inc.

2. The term "the '010 Patent" shall mean U.S. Patent No. 6,414,010.

3. The term "the '743 Patent" shall mean U.S. Patent No. 6,835,743.

4. The term "the '848 Patent" shall mean U.S. Patent No. 6,881,848.

5. The term "the '943 Patent" shall mean U.S. Patent No. 6,620,943.

6. The term "the patents-in-suit" shall mean the '010 Patent, the '743 Patent, the '943 Patent and the '848 Patent, jointly, singly or in any other combination.

7. "Fipronil" means the fipronil molecule or fipronil technical material that contains the fipronil molecule and other impurity chemical compounds.

8. "Accused Product" means any commercial, experimental, or developmental Fipronil or Fipronil-containing product that has been or is intended to be made abroad or in the U.S., or sold, offered for sale, or used in or imported into the U.S., by or for Defendant.

9. The term "person" shall refer to natural persons or any business, legal, or governmental entity or association, as well as any entity's or association's officers, agents, or employees.

## INSTRUCTIONS

A. Each Interrogatory shall be answered separately and fully in writing and under oath, unless it is objected to, in which event the reasons for the objection shall be stated with specificity.

B. Defendant shall be under a continuing obligation to supplement its answers to the Interrogatories set forth below to the extent provided in Rule 26(e)(1) of the Federal Rules of Civil Procedure.

C. Each Interrogatory calls for not only Defendant's knowledge, but also all information that is available to Defendant by reasonable inquiry and due

2

diligence, including inquiry of Defendant's directors, officers, employees, agents, consultants, experts, representatives, and attorneys.

D. No Interrogatory shall be read as limiting any other Interrogatory.

E. If the answer to all or any part of an Interrogatory is that Defendant lacks knowledge concerning the requested information, set forth such remaining information as is known to Defendant and describe all efforts made by Defendant or by its attorneys, agents, representatives, consultants, or experts, or by any other person employed or retained by Defendant, to obtain the information necessary to answer the Interrogatory. If any estimate or approximation can reasonably be made in place of unknown information, also set forth Defendant's best estimate or approximation, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate or approximation is made.

F. If any information furnished in answer to all or any part of an Interrogatory is not within the personal knowledge of the individual who verifies the answer, identify the person to whom all or any part of the information is a matter of personal knowledge and upon whose information the answer is based.

G. If any Interrogatory is answered by reference to a document, identify and produce the document containing the requested information.

If you refuse to respond to any of these Interrogatories or any portion of these Interrogatories on the ground that it seeks information privileged or otherwise immune from discovery, identify the specific privilege or immunity claimed and the basis for any such claim.

## INTERROGATORIES

1. Identify and fully describe each Accused Product, including, but not limited to, identifying the trademark or trade name of the product, all internal and external codes or designations corresponding to the product, any patent or patent application (and any specific patent claims thereof) pertaining to the product or the manufacture or use of the product, the date on which the product was first made, and the final chemical composition of the product.

2. Describe the manufacturing process for each Accused Product (including the Fipronil contained in the product), including: the chemical compounds and reagents used, the chemical reactions and manufacturing steps involved, the reaction conditions employed, and the equipment used.

3. For each Accused Product, state (a) the dates when each such product was, or is intended to be, made, used, offered for sale or sold in, or imported into, the United States; (b) all persons or entities to whom each such product was, or is intended to be, sold or offered for sale in, or imported into, the United States; and (c) each location of your inventories for the product and the inventory levels there in terms of units and amounts.

4. For each Accused Product, identify each person that manufactured, imported into the U.S., or sold or offered for sale in the U.S. the product; state which of these activities that person did; and describe each person's current involvement in such activities.

5. State:

(a) the identity of each of your parents, predecessors, subsidiaries, joint ventures, other affiliated entities and any third parties that is or has been engaged in the research, development, manufacture, testing, marketing, distribution, sale, exportation, importation, regulatory approval, financial reporting or licensing of each Accused Product;

(b) the role of each entity, identified in response to subpart (a), in the research, development, manufacture, testing, marketing, distribution, sale, exportation, importation, regulatory approval, financial reporting or licensing of each Accused Product; and

(c) the locations and facilities where you or your predecessors, parents, subsidiaries, joint ventures other affiliated entities and any third parties are, or have been, engaged in the research, development, manufacture, testing, marketing, distribution, sale, exportation, importation, regulatory approval, financial reporting or licensing of each Accused Product.

6. Describe the intended or anticipated uses (including any fields of use), methods of use, instructions for use, and application procedures (including step-by-step application instructions or practices) for each Accused Product, and identify any such use, method or procedure for which Defendant has sought, or plans to seek, regulatory approval, and identify all documents reflecting, describing or referring to: such use, method or procedure; and any steps taken to obtain regulatory approval for the use, method or procedure.

7.      Set forth your organizational structure as it relates to the research, development, manufacturing, testing, marketing, promotion, distribution, exportation, importation, commercialization, sale, offers for sale, licensing, regulatory approval and financial reporting of, or with respect to, any Accused Product, including, for each of these activities, identifying all persons whose have responsibilities for such activity and describing the pertinent knowledge of each such person and their position or other association with Defendant, and identifying the individuals who have held executive or operational management positions for each division, department, or other organizational group involved in such activity.

8.      For each Accused Product, identify each actual and prospective producer, supplier, distributor and other seller (including wholesalers and retailers), and end-user, and specify each such entity with which you have communicated and the date of any such communication.

9.      For each Accused Product, describe any investments Defendant or any third party has made in research, design, development, manufacturing, commercialization, distribution, marketing and sales including the timing and monetary amounts of the investments.

10.     Identify all patents and patent publications, non-patent publications, products, other prior art and any other information studied or otherwise considered in the course of the development of each Accused Product, and state in detail the circumstances of such study or consideration.

11. Describe in detail the legal and factual basis for your contention in paragraph 62 of your Answer that "Cheminova is not infringing and has never infringed, either directly, by inducement, or contributorily, any claim of the '010, '743, '943, or '848 patents, either literally or under the doctrine of equivalents," including but not limited to identifying and fully describing each claim of the patents-in-suit that Defendant contends it has not infringed, the specific claim limitations that Defendant contends are not met by any Accused Product or any use for any Accused Product for which Defendant has sought, or plans to seek, regulatory approval, and why Defendant contends those claim limitations are not met and identify all persons with knowledge thereof.

12. Describe in detail the legal and factual basis for your contention in paragraph 63 of your Answer that "[e]ach of the claims of the '010 and '743 patents is invalid due to a failure to comply with the requirements of patentability set forth in Title 35 U.S.C. *et seq.*, including but not limited to §§ 101, 102, 103, and 112," and identify all prior art, evidence, documents or things relating to Defendant's invalidity contentions and all persons with knowledge thereof.

13. State in detail the circumstances in which Defendant first learned of the existence of the patents-in-suit, including without limitation the date on which such information was first obtained, the source of such information, any efforts made to secure such information, the substance of all such information obtained and all actions taken as a result of obtaining such information.

14. Identify and describe any communications or opinions (including opinions of counsel) of which you are aware, either written or oral, that allege or discuss the actual or

potential infringement of any of the patents-in-suit, or that support or challenge the validity or enforceability of any of the patents-in-suit, and identify the names and positions of all persons that authored or rendered such communications, and state whether, and if so why, Defendant contends it reasonably relied upon any such opinions.

15. Identify and describe any studies, tests, comparisons, analyses, inspections, or reports (collectively referred to as "tests") conducted by you or on your behalf concerning whether any Accused Products are within the scope of any of the claims of the patents-in-suit, or relating to the validity or enforceability of any of the patents-in-suit, and for each such test:

    (a)    identify the patent/s to which the test related;

    (b)    identify the items that were tested by type, product name, internal or external code or designation, trademark, and trade name;

    (c)    describe the disposition of any samples of the items after completion of the test;

    (d)    identify the persons who requested or authorized the test;

    (e)    identify the persons who conducted the test, including their employer, title, business address and business telephone number;

    (f)    identify the date and location of the test;

    (g)    describe the methods used to conduct the test;

    (h)    describe the results of the test; and

(i) identify any documents, records, or technical data that were generated during the test or that report the results of the test.

16. Identify any changes to any method for making or using any Accused Product ever considered, proposed, or evaluated for any purpose, and include in your response, without limitation: (a) for each such change, an identification of whether such changes were in any way related, in whole or part, to avoiding infringement of any of the patents-in-suit; (b) for each such change, an identification of whether or not such changes were implemented; and (c) for each such change that was not implemented, a description of why the change was not implemented.

17. For each Accused Product, state the projected annual costs, profits, revenues, and sales for the next five years.

18. Identify and describe in detail any patent licenses and licensing relationships you have in connection with any Accused Product or any other insecticide, fungicide, or herbicide products, including the nature and scope of the license (for example, as exclusive or non-exclusive; or as restricted or non-restricted by territory or with respect to whom the product may be sold) and any royalty rates.

19. Separately for each of the foregoing and any subsequent interrogatories, identify (a) the person(s) most knowledgeable about the information requested in the interrogatory, including all persons, other than persons whose functions are only clerical, who provided information or assistance in the preparation of your answers thereto; and (b) documents sufficient to confirm the accuracy of the information provided by Defendant in response to the interrogatory.

Dated: May 24, 2010

By:_____
Pressly M. Millen (NCSB No. 16178)
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
pmillen@wcsr.com
phone: (919) 755-2100
fax: (919) 755-2150

*Attorneys for Plaintiffs*
*BASF Agro B.V., Arnhem (NL), Wädenswil Branch and Bayer S.A.S.*

<u>Of Counsel:</u>

Kenneth A. Gallo
Craig Benson
Kent Kemeny
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON, LLP
2001 K Street NW
Washington, DC 20006-1047
kgallo@paulweiss.com
cbenson@paulweiss.com
kkemeny@paulweiss.com
phone: (202) 223-7300
fax: (202) 223-7420

Kripa Raman
Jayson L. Cohen
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
kraman@paulweiss.com
jlcohen@paulweiss.com
phone: (212) 373-3000
fax: (212) 757-3990

Robert J. Koch
MILBANK, TWEED, HADLEY & MCCLOY LLP

1850 K Street, N.W., Suite 1100  
Washington, DC 20006  
rkoch@milbank.com  
phone: (202) 835-7500  
fax: (202) 835-7586

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record for Defendant to the above cause in accordance with the Federal Rules of Civil Procedure on May 24, 2010.

By: _____
       Kripa Raman